Milltg-AN, J.,
delivered tbe opinion of tbe court:
This action rvas brought in tbe lifetime of Thomas O. Lar-kin, and in his own name. He is now dead, and it stands revived, and is prosecuted in the name of bis personal representatives. In tbe original petition it is claimed that Thomas O. Larkin held and discharged tbe duties of two offices, navy agent and naval storekeeper, at the same time. His accounts as navy *538 agent have been settled, and this action, is now prosecuted to recover, in addition thereto, the salary due the office of naval storekeeper for the time he discharged its duties, and we ñnd the facts to be:
1. On the 10th of March, 18-17, the said Thomas O. Larkin was nominated by the President, and, by and with the advice and consent of the Senate, confirmed as “temporary naval agent for the northwest coast of North America;” and under this authority he held the office and discharged its duties until the 30th of September, 1817, when his office was discontinued.
2. The compensation allowed by law for the service of navy agent is contingent and dependent on tire amount of public money the agent disburses. ITe receives one per centum commission on his disbursements, provided such commission does not exceed two thousand dollars. The account for this service, although complained of in the petition, appears to have been settled, and, therefore, it is out' of the ease.
3. On the 11th of September, 1847, Commodore Shubrick, commander of the Pacific squadron, appointed Larkin “naval storekeeper” for the post of Monterey, where he was acting as navy agent, and informed him that his duties as storekeeper would be in addition to his duties as navy agent, and that he was authorized to employ a clerk, ivhose compensation, as well as his own, would commence from the date of his acceptance of-the appointment.
4. On the 17th of September, 1847, the said Larkin wrote to the Secretary of the Navy, informing him of his appointment by Commodore Shubrick, and that he had executed his bond and commenced receiving stores; and that he received the office under the condition of remuneration as storekeeper, separate and apart from his pay as navy agent. He added, “ Should you Wish the two appointments to beheld by separate persons, I should prefer being navy agent, and would consider it as a favor to be continued by the Navy Department in Washington.”
In reply to this letter, the Secretary informed him, under date March 27, 1818, that he had received his bond, but that the usage of the Government did not warrant the same individual holding two offices; and without any knowledge that he had been appointed naval storekeeper, one Charles T. Botts was appointed on the 16th September, 1847, and that he had exe *539 cuted bis bond, and sailed on the steamship Matilda, in the month of October last.
In this letter Secretary Mason directed Larkin to deliver to Botts the stores and public property in his charge, and to send on a special account to the Department for taking care of the public stores, including expenses of storage, clerk-hire, &e.
5. Subsequently, on the 18th of April, 1848, the Secretary of the Navy wrote to Larkin that “by the laws of the United States no officer can receive .compensation or salary for discharging the duties of more than one office at the same time. Your claim, therefore, for conpensation as navy agent and naval storekeeper, under appointment of Commodore Skubrick, cannot be allowed. You may receive the compensation allowed by law for either, but not for both.”
6. No other grounds upon which the claim was rejected appear in the Navy Department than those contained in Secretary Mason’s letter, above recited. And Secretary Toucey, after him, in November, 18C0, states that if the said Larkin had received compensation as naval storekeeper, it would have been at the rate of $1,500 a year from the date of his appointment by Commodore Skubrick, (September 14,1847,) until Mr. Botts assumed the duties of the office, (May 18,1848.)
Under these facts found in the record, two questions are presented for decision: First, whether or not Larkin was ever lawfully appointed naval storekeeper; and second, if so appointed, was he entitled under the laws of the United States, as they then existed, to compensation for both offices at the same time? The first question answered negatively substantially settles the second, and ends this controversy.
Larkin was appointed by the President, by and with the advice and consent of the Senate, special navy agent, under the act of March 3, 1809, (section 3, 2 Stat., 530,) and his compensation fixed at one per centum as commissions, in lieu of all expenses, provided such commissions did not exceed two thousand dollars; and as such the Government has settled and paid his salary.
The authority to appoint naval storekeepers is derived under the acts of June 17, 1844, and March 3, 1847, (1 Brightley’s Dig., 697, section 199.) The former act authorizes the Secretary of the Navy to order a competent commissioned or warrant officer of the Navy to take charge of the naval stores for foreign *540 squadrons in place of naval storekeepers at each of the foreign ports where said stores may be deposited, and where a storekeeper is necessary. But this act is so modified by the latter as to authorize the selection and appointment of citizens other than naval officers to be storekeepers on foreign stations, when suitable naval officers cannot be ordered on such service, or when, in the opinion of the Secretary of the Navy, the public interest will be promoted thereby. Persons so selected and appointed are to receive the same compensation as now allowed, and to enter into bond with security, as is required by law of officers of the Navy performing said service.
It is clear, under the act of 1847, á citizen could only be appointed to the office of naval storekeeper by the Secretary of the Navy when a suitable naval officer could not be ordered on such service, or, in the Secretary’s opinion, the public service would be promoted by the appointment of a citizen. Larkin was not appointed by the Secretary, and Commodore Skubrick certainly had no authority of law to make such an appointment. Possibly he might, under a necessity, have ordered a commissioned or warrant officer of the Navy to discharge the duties of the office temporarily, but it cannot be contended that he had any authority of law to order a citizen or to clothe him with the functions of the office.
But it is insisted an appointment made without law, if after - ward ratified by lawful authority, is valid, and entitles the party holding under such ratification to the pay and emoluments of the office. Without, at present, undertaking to decide this question, it will be sufficient to inquire whether the appointment made by Commodore Skubrick was subsequently ratified by the Secretary of the Navy. It is a familiar principle in cases of assumed agency, that a subsequent ratification, made with a full knowledge of all the material facts, is equivalent to a previous authority. But this doctrine must be taken with the qualification that the act of ratification must take place at a time and under circumstances when the ratifying party might have himself lawfully done the act which he ratifies. (1 Parsons on Contracts, 44, 45, and notes, with authorities cited.)
Larkin was appointed by Commodore Sbubrick on the 14th of September, 1847, and on the 17th of the same month he wrote the Secretary that he had been appointed by the com *541 modore, and bad executed bis bond, and commenced receiving stores. On tbe 16tb of September, 1847, only two days after Larkin was appointed by Sbubrick, and before tbe Secretary bad any knowledge of bis appointment, be appointed Charles T. Botts, wbo executed bis bond as required by law, and before tbe date of tbe receipt of Larkin’s letter Botts had sailed for the post of bis duty. Tbe office was lawfully filled by tbe Secretary before be was advised of Larkin’s appointment, and be bad therefore no power, without first removing bis own appointee, to ratify tbe commodore’s appointment. This be did not do; on tbe contrary, be informed Larkin of all tbe facts, and directed him. to deliver Botts tbe stores and public property in bis charge, and to send in a special account to tbe Department for taking care of them, including expense of storage, clerk hire, &c.
It is true that afterward, when Larkin sent in bis account, claiming tbe salary of both offices, tbe Secretary, after informing him that be could not receive pay for more than one office at tbe same time, told him that be might “ receive the compensation allowed by law for either, but not for both.” This was no ratification — was not so intended, nor can it be so held, because tbe same legal difficulty is interposed here that existed when tbe Secretary was first advised of Larkin’s appointment: tbe office was filled, and be could neither ratify an unauthorized previous appointment, nor make a new one without displacing Botts, which be did not propose to do. It follows, therefore, that Larkin never having been lawfully appointed or subsequently affirmed by tbe Secretary as naval storekeeper, bis personal representatives can take nothing by this action. Petition dismissed.